**Signed: May 03, 2005**



_____
**LESLIE TCHAIKOVSKY
U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                   No. 04-45081 T
                                        Chapter 11
COYOTE CONSTRUCTION,

         Debtor.
_____/

**MEMORANDUM OF DECISION RE CONVERSION OF CASE TO CHAPTER 7**

The Office of the United States Trustee (the "UST") filed a motion to convert the above-captioned case to chapter 7 of the Bankruptcy Code or to appoint a chapter 11 trustee. Shortly before the scheduled hearing on the motion, the debtor (the "Debtor") filed a motion to dismiss the case. The hearing on the UST's motion was continued so that the two motions could be heard together. At the conclusion of the continued hearing, on May 2, 2005, the Court denied the motion to dismiss and granted the motion to convert. The Court stated briefly the grounds for its decision. The purpose of this Memorandum is to explain those grounds in more detail.

**SUMMARY OF FACTS**

Prior to its conversion, the Debtor was engaged in the construction business. In its schedules of assets and liabilities, the Debtor listed general unsecured debt totaling approximately $132,000. Of this amount, approximately $60,000 was scheduled as debt for unpaid contributions owed to union trust funds (the "Trust Funds"). The Debtor's filing, on October 6, 2004, was apparently precipitated by a desire to stay collection actions by the Trust Fund creditors.

The first few months of the case were devoted primarily to disputes concerning the Debtor's application to employ counsel. The Debtor sought leave to employ Sharon Ceasar ("Ceasar"), an attorney with no prior chapter 11 bankruptcy experience, as its primary bankruptcy counsel and to employ Willie Phillips ("Phillips"), an experienced chapter 11 bankruptcy counsel, as her "co-counsel" to assist her. The UST objected to the employment of both counsel, Ceasar based on her inexperience, and Phillips based on the Court's prior ban on his employment as chapter 11 counsel for past misconduct. Ultimately, the Court approved Casear's employment. However, further difficulties arose when Phillips persisted in assisting Ceasar at a deposition and in court.

During this period, there were other problems in the case unrelated to the employment of counsel. The Debtor's monthly operating reports were not in compliance with the UST's guidelines. The Debtor's counsel and responsible officer both expressed the view that they should not be required to modify the

2

reports and that the UST's dealings with them were based on a racist vendetta against the company because it was African-American owned and represented by African-American counsel.

The Trust Fund creditors complained that the Debtor was not paying contributions to the Trust Funds based on its post-petition activities either. The Debtor blamed the Trust Fund creditors for its failure, asserting that the Trust Fund creditors' unwillingness to execute lien releases prevented the Debtor from obtaining payment for its services from the various general contractors. The Court ordered the parties to meet and confer and attempt to work out this problem. The UST's motion to convert the case or to appoint a chapter 11 trustee was continued to give them an opportunity to do so and an evidentiary hearing on the motion to convert was scheduled two weeks later.

Shortly before the evidentiary hearing, the Trust Fund creditors filed the declaration of Wayne E. McBride ("McBride"), the Collections Manager for the Trust Funds. In the declaration, McBride stated that he had not received a request for a lien release from the Debtor after it filed for bankruptcy until March 2005, after the initial hearing on the UST's motion to convert the case. He did receive a call from someone on January 28, 2005, asking for confirmation that the Debtor had paid the benefits due for work performed in October 2004. At that time, the check for October had been received but had not yet cleared the bank. In addition, the Trust Funds had not yet received the contribution reports or any payments for November or December 2004.

3

In March 2005, the Debtor wrote him, requesting a limited release. He directed his counsel to provide the Debtor with blank release forms so that they could fill in the amount of the checks to be received, the project names, the general contractors from whom the checks would be received, and the time period of work provided for in the payment. He has never received back the completed release forms. Moreover, he has never received contribution reports from the Debtor, let alone payments for December 2004 through February 2005.

The evidentiary hearing never took place. Instead, shortly before the hearing, the Debtor filed a motion to dismiss the case. The evidentiary hearing was converted to a hearing on oral argument only, to be conducted at the same time as the hearing on the motion to dismiss. The primary basis for the motion was that the counsel for the UST had a racially motivated personal vendetta against the Debtor and its counsel and that, having observed the Court's conduct of the various cases on its calendar, it was clear that matters involving African-Americans were dealt with more harshly than those involving persons of other races.

At the hearing on the motion, the UST and the Trust Fund creditors both urged the Court to convert the case so that there could be some attempt to locate assets available for unsecured creditors. In addition to claims of bias, the Debtor urged the Court to dismiss the case, arguing that the unsecured creditors would be better served since there were no assets left in the estate with which they could be paid. The Debtor noted that it

4

had collected all of the accounts receivable that were outstanding at the time of the filing. The Debtor did not disclose what had been done with the funds collected.

Had there been no creditor urging conversion, the Court might have been inclined to grant the Debtor's motion on the condition that the Debtor agree to a dismissal with prejudice. However, given the Trust Fund creditors' preference for conversion, the Court denied that motion and granted the motion to convert. It appears that at the time the bankruptcy case was filed, the Debtor had accounts receivable from which the Trust Fund creditors might have been paid. The Debtor took advantage of the automatic stay by filing the case and prevented the Trust Fund creditors from accessing those assets. The Debtor may have disposed of the funds collected in such a way that they may not be recovered by a chapter 7 trustee. However, it a chapter 7 trustee may be able to recover some or all of those funds. To dismiss the case under these circumstances appears unjust.

END OF DOCUMENT

```
 1
 2
 3                          COURT SERVICE LIST
 4
    Sharon L. Ceasar
 5  Law Offices of Sharon L. Ceasar
    125 University Ave.
 6  Berkeley, CA 94170

 7  Tracy L. Mainguy
    Operating Engineers Local Union No. 3
 8  1620 S Loop Rd.
    Alameda, CA 94502
 9
    Bruce K. Leigh
10  Stanton, Kay & Watson
    101 New Montgomery St., Fifth Floor
11  San Francisco, CA 94105

12  Andrew Velez-Rivera
    U.S. Department of Justice
13  Office of the United States Trustee
    1301 Clay St., Ste. 690-N
14  Oakland, CA 94612-5217

15

16

17

18

19

20

21

22

23

24

25

26
```