**Entered on Docket
October 06, 2005**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

**Signed: October 06, 2005**

_____
**LESLIE TCHAIKOVSKY
U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                        No. 04-45081 T
                                             Chapter 7
COYOTE CONSTRUCTION,

        Debtor.
_____/

**MEMORANDUM OF DECISION RE FINAL FEE APPLICATION**

Sharon Ceasar ("Ceasar") sought allowance of a chapter 11 administrative claim for legal services provided to the above-captioned debtor (the "Debtor"), as a chapter 11 debtor-in-possession, prior to conversion of the case to chapter 7. She requested allowance of a claim for fees and costs totaling $32,734.16. Sara Kistler (the "UST"), the United States Trustee for this Region, objected to her application. For the reasons stated below, the Court will allow Ceasar a chapter 11 administrative claim in the amount of $16,391.66.

**BACKGROUND**

The above-captioned case was filed as a chapter 11 case on September 16, 2004. Through approximately February 2005, the

Debtor operated its business as an underground contractor. The underground contracting business apparently suffers when it rains. The Debtor represented that its business encountered financial problems due to a lengthy rainy season in the winter of 2004. The Debtor is a party to a collective bargaining agreement. As a result of the weather, the Debtor represented, it fell behind in making its employer contributions to the union trust funds (the "Trust Funds"). At the time the Debtor filed its petition, its scheduled claims totaled approximately $132,000 of which the Trust Funds' claims comprised approximately $60,000.

The chapter 11 case was contentious and nonproductive. Much time was wasted due to the Debtor's attempt to employ Willie Phillips ("Phillips") as Ceasar's co-counsel. Phillips had previously been banned by the Court from representing chapter 11 debtors-in-possesion due to misconduct. Phillips had represented the Debtor for years in nonbankruptcy matters. Ceasar had never represented a chapter 11 debtor-in-possession before. The Office of the United States Trustee objected to both employment applications on the ground that they were simply a device for circumventing the Court's ban on Phillips' representation of the Debtor. The Court denied Phillips' application but, after notice and hearing, granted Ceasar's application.[1]

---

[1] This did not end the controversy over Phillips' role in the case. The UST complained that Phillips had attempted to represent the Debtor at the Trust Funds' Rule 2004 examination of the Debtor's responsible person, Wanda Langley ("Langley"). Later, the Court was required to admonish Phillips at a Court

2

A second area of controversy concerned the Debtor's monthly operating reports. Initially, the Debtor failed to file monthly operating reports at all. Later, when a few reports were filed, the UST found them deficient and inconsistent. The UST also had concerns about certain expenditures they revealed. At the time of the conversion, the Debtor only filed monthly operating reports for September, October, and November 2004. The Debtor filed no reports for any of the following months. At the time the case was converted to chapter 7, reports were due for December 2004 and for January through March 2005.

The final area of controversy concerned the Debtor's failure to provide timely reports to the Trust Funds of hours worked by the Debtor's employees and to make the required employee contributions. The Debtor attempted to blame the Trust Funds for this failure. It contended that the Trust Funds had refused to sign the necessary releases to free up the funds due from the general contractors. The Trust Funds represented that it had never been asked to sign any releases. When the Trust Funds learned that the Debtor claimed they had refused to sign releases, they sent blank releases forms to the Debtor to complete. However, the Debtor failed to complete and return them.

On February 3, 2005, the UST filed a motion to convert the case to chapter 7 or to appoint a chapter 11 trustee. The Trust Funds filed a declaration in support of the motion. The Debtor

---

hearing that he was not permitted to advocate for the Debtor at the hearing.

3

opposed the motion. The Court set an evidentiary hearing on the motion.

On the day set for the hearing on the motion, the Debtor filed a motion to dismiss the case. As a result, the Court vacated the evidentiary hearing and continued the motion to convert to the date scheduled for the hearing on the motion to dismiss. At the conclusion of the hearing on both motions, based on the Trust Funds' continued support for conversion, the Court ordered the case converted to chapter 7.

**DISCUSSION**

**A. FEE APPLICATION**

In her fee application (the "Fee Application"), Ceasar represented that she had performed 116.5 hours of legal services for the Debtor. She stated that her normal hourly rate was $300 per hour. Thus, she requested fees for these services totaling $34,950. She represented that she had incurred $1,084.16 in costs so that the total of her fees and costs was $36,034.16. Ceasar represented that she received a pre-petition retainer of $3,300. She apparently applied this retainer to reimburse her costs in full and a portion of her fees. Thus, she sought allowance of a chapter 11 administrative claim in the amount of $32,734.16.

Ceasar provided a project breakdown in both the narrative and for the time entries. She divided her work into six categories as follows: (1) Prepare chapter 11 schedules & prepare for & attend 341 meeting, (2) Application for employment of attorneys, (3) Responses to U.S. Trustee's motions to convert and reconsideration

4

of retention Order, (4) Responses to discovery request & review and analysis of Operating Reports, (5) Request for voluntary dismissal, and (6) Case administration. The bulk of her $1,084.16 in costs were represented by the $839 filing fee. In addition, she represented that she had incurred $14.16 in Pacer costs, $75 in mailing costs, and $156 in copying charges calculated at the rate of twenty cents per page.

**B. UST'S OBJECTION**

The UST filed an objection to the Fee Application. First, she argued that the Court should disallow all of the requested fees. She argued that the services provided by Ceasar were unnecessary because it was clear from its inception that the chapter 11 case had no chance of succeeding.[2] As was later disclosed to the Court, the Debtor's responsible person, Langley, "disassociated" herself from the Debtor and "associated" herself with another construction company one week after the filing. According to the UST, Ceasar should have seen this departure as a "red flag" that the Debtor's chapter 11 case was not likely to succeed.

The UST contended that Ceasar's inexperience caused her to incur excessive and unnecessary fees. The UST argued that the

---

[2]The UST also contended that the Fee Application was premature because it was not yet clear whether there would be sufficient funds in the estate to pay chapter 11 administrative expense claims. Normally, the Court would not determine whether to allow a chapter 11 administrative expense claim until it was established that some payment could be made to chapter 11 administrative claimants. However, since the Fee Application had been fully briefed and Ceasar urged the Court to rule on it, the Court agreed to do so.

5

estate should not have to pay for this inexperience. The UST cited In re Coones Ranch, Inc., 7 F.3d 740, 744 (8th Cir. 1993) for the proposition that attorneys' fees may be denied to an attorney who assists the debtor in filing a futile chapter 11 case.

Alternatively, the UST asserted that the fees requested were excessive and, if allowed at all, should be allowed in a much lesser amount. The UST's specific objections were as follows:

1. The UST contended that all of Ceasar's fees for services performed prior to issuance of her retention order should be disallowed. The UST noted that Ceasar did not obtain a retention order until five months after the case was filed. While the UST acknowledged that this delay was largely due to the controversy over Phillips' role in the case, she observed that Ceasar should not have let herself become embroiled in Phillips' problems.

2. The UST also contended that all of Ceasar's fees in connection with Phillips' employment applications should be denied. She asserted that this application was hopeless from the start and that Ceasar should have realized it.

3. The UST next contended that all of Ceasar's fees for drafting the motion to dismiss should be denied. She asserted that the motion was unnecessary and that Ceasar's work on the motion was not reasonably likely to benefit the estate. She noted that Ceasar did not work on this task until after the UST's motion to convert the case was filed. The UST asserted that the motion failed to identify any benefit to creditors from dismissing the

6

case rather than converting it to chapter 7. The Debtor merely blamed others for the failure of the case.

    4. Finally, the UST contended that all of Ceasar's fees for services performed after the case was converted to chapter 7 should be denied. She cited <u>Lamie v. United States Trustee</u>, 540 U.S. 526 (2004) for the proposition that a debtor's attorney may not be paid by the bankruptcy estate for work done during a chapter 7 case. The UST also made two non-work related objections. First, she noted that the Fee Application contained the following ambiguous statement on page 2, line 2 "Costs to be applied toward fees." The UST asked that this statement be explained, particularly in light of the fact that the Fee Application did not seek reimbursement of any costs. Second, the UST noted that Ceasar had not certified that the Fee Application complied with the Court's Fee Guidelines. She asked that all fees be disallowed until a certification was filed.

**C. REPLY**

    Ceasar filed a reply to the UST's objection to the Fee Application. Her reply reiterated accusations made against the UST during the case: i.e., that the Trial Attorney for the UST had a personal vendetta against her and Phillips which was motivated by racial bias. She contended that she could not have known that the chapter 11 bankruptcy case was not viable when it was filed. To the contrary, she argued that the Debtor wanted to reorganize and pay creditors. However, the harassment the Debtor received from the UST made the process too costly.

7

Ceasar characterized as ridiculous the UST's objection to her being employed to represent the Debtor based on lack of experience with chapter 11 work. She insisted that she had the right to practice law in any area despite any prior experience. She stated that she has been practicing law since 1992 and had never had her right to represent a client challenged based on lack of experience.[3] She contended that her fees would have been less had this ridiculous challenge not been raised by the UST. She blamed the Court's lack of clarity in directing her to submit the proposed form of order for her delay in obtaining the retention order. She also blamed her lack of familiarity with the Court's electronic filing system, which had recently been made mandatory. Finally, she asserted that the application should be deemed granted on the date the Court granted it orally.

With respect to the work done with respect to the employment applications, she argued that these fees were incurred because of the attorney for the UST, not by Phillips. She objected to any reduction of these fees. Finally, she stated that she was unaware of any requirement that an attorney file a certification of compliance with the Court's Fee Guidelines.

---

[3]This comment reflects Ceasar's inexperience in chapter 11. A chapter 11 debtor-in-possession is a fiduciary for its creditors and is not entitled to an unfettered choice of counsel. The Bankruptcy Code requires the Court, in approving the employment of a debtor-in-possession's counsel, to conclude that the employment of the counsel in question will be in the best interests of the estate and its creditors, not just in the best interests of the debtor.

8

**D. DECISION**

**1. Request That Fees Be Disallowed in Their Entirety**

The Court will not deny the Fee Application in its entirety on the ground that Ceasar should have known that the chapter 11 bankruptcy case had no chance of success. The Court agrees with the UST that fees may be denied on this basis if the attorney knew or should have known that this was so. However, the record concerning the attorney's knowledge must be clear. The record is insufficient to permit the Court to conclude that Ceasar knew or should have known from the inception of the chapter 11 case that the Debtor would be unable to reorganize.

While at some point the Court learned that Langley, the Debtor's responsible person, "disassociated" herself with the Debtor and "associated" herself with another construction company shortly after the case was filed, it is not clear when Ceasar learned this fact. The Court is under the impression that the Debtor still had employees and was still performing work for several months after the chapter 11 was filed. The Debtor apparently bounced eighteen checks during the fall of 2004. However, it has not been established that Ceasar knew this nor does the Court have a clear picture of the Debtor's overall financial condition when it filed the chapter 11 case.

The case cited by the UST--<u>Coones Ranch</u>--is distinguishable. First, it is a classic "new debtor syndrome" case. There, after a secured creditor had obtained relief from the automatic stay in an individual's personal bankruptcy case, the individual formed a

9

corporation, transferred the encumbered real property to it, and, with the assistance of an attorney, filed a chapter 11 petition on its behalf. The debtor had no employees and no business operations. Coones Ranch, 7 F.3d at 741-43. Moreover, in Coones Ranch, the bankruptcy court conducted an evidentiary hearing before concluding that the sanctions in question were appropriate.

**2. Request That Fees Be Allowed in Reduced Amount**

Before addressing the UST's objections to specific categories of Ceasar's fees, the Court must discuss the methodology to be used in calculating the fees allowed. In determining reasonable fees to be awarded to a court approved professional in a bankruptcy case, the Court is generally required to use a "lodestar" analysis. This requires the Court first to determine the reasonable hourly rate. Then, the Court must determine the reasonable time spent on necessary and beneficial tasks. The fee award is generally a multiple of those two determinations.[4] In re Dawson, 390 F.3d 1139, 1152 (9th Cir. 2004)(affirming award calculated at rate of $200 per hour).

Ceasar represented that her normal billing rate is $300 per hour. Ceasar's legal services may warrant this hourly rate in an area of the law where she has experience. However, Ceasar

---

[4] The Court may make adjustments to the product of these two numbers, taking into account unusual factors in the case. The Fee Application appears to argue for an increase in the calculation due to the complexity of the issues and the preclusion from accepting other representation. The Court finds neither of these arguments persuasive.

10

admitted that she had never represented a chapter 11 debtor before. The quality of her performance reflected this inexperience.[5] However, the hourly rate used for the Court's "lodestar" calculation should reflect Ceasar's lack of experience. The Court concludes that the reasonable hourly rate for Ceasar's services in this case is $225.

The Court will now evaluate the time reasonably spent on necessary and beneficial tasks.

**(1)  Service Performed Prior to Retention Order**

The Court does not believe that prevailing law requires the Court to disallow a chapter 11 attorney's fee request for work performed before a retention order is obtained. The Court believes that prevailing law requires the Court to disallow an attorney's fee request for work performed before the attorney has applied for approval of her employment. See In re Downtown Investment Club III, 89 B.R. 59, 63 (Bankr. 9th Cir. 1988)(employment application not filed until nearly five years after case filed).

Moreover, counsel for a chapter 11 debtor-in-possesion counsel is generally allowed fees for services performed during the first few weeks of the case as long as the employment application is

---

[5]As noted above, the Court did not consider ridiculous the UST's objections to Ceasar's employment by the Debtor based on lack of experience. However, Ceasar represented herself to the Court as willing to educate herself so as to represent the Debtor properly. She seemed competent and sincere, and the Court was willing to give her a chance.

11

filed promptly. This case was filed on September 16, 2004. Ceasar's employment application was filed on October 6, 2004. The Court sees no ground for disallowing any fees incurred as a result of the this brief delay in filing the employment application.

However, the Court will disallow the fees requested for the time spent in connection with the motion for reconsideration of Ceasar's employment application and objecting to the UST's form of order on the ground that it did not include a provision permitting her to be employed. The Court agrees with the UST that Ceasar should not have permitted herself to become embroiled in Phillips' problems. Had the Debtor simply sought to employ Ceasar alone, very likely, the application would have been granted without a hearing. The Court also believes that its oral direction in court, requiring Ceasar to submit a proposed retention order was clear and that her objection to the form of the UST's order was neither necessary nor beneficial. The Court calculates the time spent on these two tasks as 5.6 hours. Thus, these hours will be subtracted from the total used in calculating the fee award.

**(2) Work Performed in Connection with Phillips' Employment Application**

The Court agrees with the UST that all of the time spent by Ceasar in connection with Phillips' employment application should be disallowed. Given the prior ban on Phillips' employment by debtors-in-possession, Ceasar should have anticipated that this application would be denied. Her services in this respect did not benefit the estate and were not reasonably likely to do so. The

12

UST has calculated the fees for this task to be $2,752 or approximately 9.2 hours in time spent. Ceasar has not challenged this calculation. Thus, the Court will disallow 9.2 hours of time spent with respect to this objection.

**(3)  Preparation of Motion to Dismiss Case**

The UST contended that Ceasar's fees for drafting the motion to dismiss should be denied. She noted that the motion identified no way in which the creditors would be benefitted by the dismissal. She observed that the motion blamed everyone but the Debtor for the Debtor's problems. The Court agrees that no fees should be allowed for this task and that the motion was not reasonably likely to benefit creditors.

The Court also agrees that the Debtor inappropriately blamed others for its problems.  In fact, the Debtor caused its own problems by failing to file timely and proper monthly operating reports and by failing to submit reports and pay employee contributions to the Trust Funds. As a result, the Trust Funds "pulled" its employees from the Debtor's jobs. Dismissing the case would not have benefitted anyone and could have harmed creditors. There was no business left to save, but there may have been assets to preserve. These assets were more likely to be preserved for creditors in a chapter 7 than if the case were dismissed.

The UST has calculated the fees for this task to be $3,450 or approximately 11.5 hours in time spent. Ceasar has not

13

challenged this calculation. Thus, the Court will disallow 11.5 hours of time spent with respect to this objection.

**(4) Post-Conversion Services**

The UST is correct that the United States Supreme Court has held that a debtor's attorney may not receive any payment for work performed while the case is in chapter 7. See <u>Lamie v. United States Trustee</u>, 540 U.S. 526 (2004). Therefore, all of Ceasar's fees for work performed after conversion will be disallowed. The UST calculated these fees to be $2,250 or approximately 7.5 hours in hours spent. Ceasar has not challenged this calculation. Thus, the Court will disallow 7.5 hours of time spent with respect to this objection.

**(5) Miscellaneous Objections**

In response to the UST's objection that Ceasar had not filed a certification of compliance with the Court's Fee Guidelines, Ceasar responded that she was not aware of the requirement.[6] However, she did nothing to cure this deficiency. Nevertheless, in this case only, due to the uncertainty at this time concerning the availability of funds to pay any chapter 11 administrative expenses, the Court will not require Ceasar to file the certification. The Fee Application is sufficiently clear to permit the Court to evaluate the reasonableness of Ceasar's fee request.

---

[6]The Court's Fee Guidelines are posted on the Court's website.

14

Ceasar did not attempt to clarify the ambiguous statement regarding costs noted by the UST. The Court speculates that Ceasar meant to say that the Debtor had agreed that the $3,300 pre-petition retainer could be applied to either fees or costs. The Court bases this conclusion on a review of the various representations concerning the pre-petition retainer during the course of the case.

The Debtor's answer to question 9 in the Statement of Financial Affairs stated that Ceasar received a pre-petition retainer of $2,500 for fees and $800 for costs. Ceasar's Rule 2016(a) statement and employment application both stated that she had received a pre-petition retainer of $2,400 for fees and $900 for costs. The Fee Application represented that Ceasar had incurred $1,084.16 in costs. Since this amount was in excess of either of the two amounts previously designated for costs, without an agreement that the retainer could be applied to either fees of costs, the Fee Application would be seeking reimbursement of a small amount of costs. It does not. If the Court has misunderstood the meaning of this ambiguous statement, Ceasar should enlighten both the UST and the Court.

## CONCLUSION

Ceasar represented that she performed 116.5 hours of legal services. The Court has concluded that 33.8 hours of these services were not necessary or reasonably likely to benefit the estate. As a result, the Court will allow fees for only 82.7 hours. The Court has concluded that a reasonable hourly rate for

15

the services provided is $225.  Thus, fees in the amount of $18,607.50 will be allowed.  Ceasar received a pre-petition retainer of $3,300 which she applied to reimburse costs of $1,084 and fees of $2,215.84.  Thus, her unpaid fees total $16,391.66. Ceasar is directed to submit a proposed form of order allowing fees in this amount as a chapter 11 expense of administration.

END OF DOCUMENT

COURT SERVICE LIST

Sharon L. Ceasar
Law Offices of Sharon L. Ceasar
125 University Ave.
Berkeley, CA 94170

Minnie Loo
U.S. Department of Justice
Office of the United States Trustee
1301 Clay St., Ste. 690-N
Oakland, CA 94612-5217

Lois I. Brady
Chapter 7 Trustee
350 Frank H. Ogawa Plaza
Suite 702
Oakland, CA 94612